No. 16-6543

# United States Court of Appeals
## for the Sixth Circuit

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

TERRENCE MILAM,

*Defendant-Appellant*.

_____

On Appeal from the United States District Court
for the Western District of Tennessee
No. 2:15-cr-20091 (Mays, S.H.)

_____

BRIEF FOR APPELLEE UNITED STATES

_____

For the Appellee:

EDWARD L. STANTON III
United States Attorney

DEBRA L. IRELAND
Assistant United States Attorney
167 North Main Street, Suite 800
Memphis, Tennessee 38103
(901) 544-4231
deb.ireland@usdoj.gov

# TABLE OF CONTENTS

Table of Authorities ................................................................. iii

Statement Regarding Oral Argument ...................................................vi

Statement of Jurisdiction...........................................................1

Issues Presented .................................................................2

I.      Whether the magistrate judge violated the Confrontation Clause at the
        suppression hearing by prohibiting Milam from playing a recording in court
        during the hearing, where Milam was able to play the recording for the witness
        at a recess and cross-examine the witness about the recording, and the court
        took the recording into consideration in ruling on the witness's credibility....2

II.     Whether Milam's within-guidelines sentence is substantively reasonable,
        where Milam produced and possessed child pornography involving the
        ongoing sexual abuse of two young girls who thought of Milam as their dad...2

Statement of the Case............................................................. 3-4

Statement of the Facts ........................................................... 5-12

Summary of the Argument........................................................ 13-14

Argument....................................................................... 15-21

I.      Because the right to confront witnesses is a right assured to defendants at trial,
        not pre-trial, proceedings, and because Milam successfully impeached a
        government witness during a pre-trial hearing on Milam's motion to suppress,
        his claim that the Confrontation Clause was violated is without merit.........15

II.     Milam's within-guidelines sentence is substantively reasonable because the
        court did not consider impermissible factors or give any single factor
        disproportionate weight………………………………………………….21

Standard of Review………………………………………………………….22-31

i

## TABLE OF CONTENTS

Conclusion ...................................................................................................32

Certificate of Compliance ..........................................................................33

Designation of Relevant District Court Documents .................................34

Certificate of Service .................................................................................35

## TABLE OF AUTHORITIES

Cases:                                                                                          Page(s)

*Barber v. Page,* 390 U.S. 719, 725 (1968). ............................................................15

*Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986). ..............................................16

*Gall v. United States,* 552 U.S. 38, 51 (2007). .......................................................22

*Nelson v. O'Neil,* 402 U.S. 622, 626 (1971). ..........................................................15

*United States v. Bostic,* 491 F. App'x 731 (7th Cir. 2012). .....................................26

*United States v. Bour,* 804 F.3d 880, 883 (7th Cir. 2015). ...............................25, 26

*United States v. Burke,* 345 F.3d 416, 425 (6th Cir. 2003). ...................................15

*United States v. Cobler,* 748 F.3d 570, 582 (4th Cir. 2014). ..................................29

*United States v. Conatser,* 514 F.3d 508, 520 (6th Cir. 2008) ...............................23

*United States v. Davis,* 361 App'x 632, 634 (6th Cir. 2010)...................................15

*United States v. Eckstrom,* 626 F. App'x 640, 641 (7th Cir. 2015).................26, 27

*United States v. Gazafi,* 594 F. App'x 162 (4th Cir. 2015). ...................................28

*United States v. Graziotti,* 619 F. App'x 980 (11th Cir. 2015). .............................28

*United States v. Green,* 202 F.3d 869, 873 (6th Cir. 2000). ...................................15

*United States v. Grigsby,* 749 F.3d 908 (10th Cir. 2014). ......................................29

*United States v. Holden*, 557 F.3d 698, 703 (6th Cir. 2010) ..................................15

*United States v. Irey*, 612 F.3d 1160 (11th Cir. 2010)............................................23

## TABLE OF AUTHORITIES

Cases: .................................................................................................Page(s)

*United States v. Irey*, 458 F. App'x 854 (11th Cir. 2012) ......................................24

*United States v. Johnson,* 440 F.3d 832, 842 (6th Cir. 2006)..................................15

*United States v. Matlock,* 415 U.S. 164, 172 (1974). ..............................................16

*United States v. Mayberry,* 540 F.3d 506-515 (6th Cir. 2008). ...............................19

*United States v. Novales*, 589 F.3d 310, 314 (6th Cir. 2009) ...........................22, 23

*United States v. Presley*, 547 F.3d 625, 629 (6th Cir. 2008) ...................................22

*United States v. Raddatz,* 447 U.S. 667, 679 (1980). ..............................................15

*United States v. Ratigan*, 581 F. App'x 587 (8th Cir. 2014) ...................................24

*United States v. Robinson*, 669 F.3d 767, 773 (6th Cir. 2012)................................22

*United States v. Shea*, 493 F. App'x 792 (7th Cir. 2012).........................................25

*United States v. Stanley,* 351 App'x 69, 74 (6th Cir. 2009) ....................................16

*United States v. Stepp,* 680 F.3d 651, 660 (6th Cir. 2012). .....................................16

*United States v. Slone,* 833 F.2d 595, 600 (6th Cir. 1987). .....................................16

*United States v. Strong,* 773 F.3d 920. 926-27 (8th Cir. 2014). ..............................28

*United States v. Thurman,* 494 F. App'x 828, 830 (9th Cir. 2012). ........................27

*United States v. Vowell,* 516 F.3d 503, 507 (6th Cir. 2008). ...................................22

*United States v. Wallace*, 597 F.3d 794, 803 (6th Cir. 2010). .................................22

*United States v. Williams,* 561 F. App'x 784 (11th Cir. 2013) ). ............................29

## TABLE OF AUTHORITIES

<u>Cases</u>:                                                          <u>Page(s)</u>

<u>Federal Statutes</u>:

18 U.S.C. § 2251(a) ..................................................................................1, 3

18 U.S.C. § 2252(a)(4)(B) .......................................................................1, 3

18 U.S.C. § 3231 ..........................................................................................1

18 U.S.C. § 3553 ....................................................................................22, 30

18 U.S.C. § 3742 ..........................................................................................1

28 U.S.C. § 41 ..............................................................................................1

28 U.S.C. § 1291 ..........................................................................................1

<u>Rules</u>:

Fed. R. E 104(a), 1101(d)(3)  .................................................................*16*

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

The United States submits that the briefs adequately set forth the facts and issues, and therefore, the decisional process would not be aided by oral argument.

## STATEMENT OF JURISDICTION

Pursuant to 18 U.S.C. § 3231, the district courts have exclusive jurisdiction over offenses against the United States. The jurisdiction of the district court was invoked by the United States Attorney for the Western District of Tennessee by charging Terrence Milam with violations of 18 U.S.C. §§ 2251(a) and 2252(a)(4)(B). Milam was indicted by a properly-constituted grand jury.

Jurisdiction over final decisions of the district courts is conferred on the United States Courts of Appeals by 28 U.S.C. § 1291. This Court's review of a sentence is authorized under 18 U.S.C. § 3742. The District Court for the Western District of Tennessee is located within the jurisdiction of United States Court of Appeals for the Sixth Circuit, pursuant to 28 U.S.C. § 41.

## ISSUES PRESENTED

I.    Whether the magistrate judge violated the Confrontation Clause at the suppression hearing by prohibiting Milam from playing a recording in court during the hearing, where Milam was able to play the recording for the witness at a recess and cross-examine the witness about the recording, and the court took the recording into consideration in ruling on the witness's credibility.

II.    Whether Milam's within-guidelines sentence is substantively reasonable, where Milam produced and possessed child pornography involving the ongoing sexual abuse of two young girls who thought of Milam as their dad.

## STATEMENT OF THE CASE

On April 9, 2015, Defendant Terrence Milam was indicted on five counts of causing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct (production of child pornography), in violation of Title 18, United States Code, Section 2251(a), and one count of possession of child pornography, in violation of Section 2252(a)(4)(B).   (Record Entry (RE) 2, Redacted Indictment, PageID 7-13.)   The earliest charged conduct occurred on or about October 13, 2013, and the most recent on January 21, 2015.   *Id*.

Milam filed a motion to suppress evidence collected at the time of his arrest. (RE-36, Motion to Suppress, PageID 66-69.)   A hearing on the motion was held on February 29, 2016.   (RE-44, Minute Entry.)

The magistrate recommended the motion be denied.   (RE-49, Report and Recommendations (R&R), PageID 164-171.)   The district judge adopted the magistrate judge's findings and denied suppression.   (RE-57, Order Denying Suppression, PageID 196-211.)

Trial was set to commence on July 5, 2016.   (RE-77, Redacted Transcript (RTr), Jury Trial/Change of Plea (COP), PageID 456.)   The parties dealt with pretrial matters, and the court called for the jury panel to be brought in.   (RE-77, RTr, PageID 481-2.)   At that time, Milam decided to enter a plea under *North Carolina v. Alford*, 400 U.S. 25 (1970), to the indictment.   (*Id.*, at PageID 484; 508;

510.)   Milam reserved his right to appeal the denial of his motion to suppress.   *Id.*

A presentence investigation report (PSR) was prepared.   (RE-76, PSR, PageID 407-453.)   Milam's criminal history placed him in Category V.   (*Id.* at para. 112, PageID 434.)   His offense level was calculated as 53, but adjusted based on the provisions of the Guidelines Manual, which caps offense levels at 43.   (RE-77, PSR, paras. 64-66, PageID 418.)   Milam's recommended guideline sentence was life, but the statutory maximum sentence was limited to 2,040 months, so that became the guideline range.   (*Id.*, para. 166, PageID 444; RE-89, Transcript of Sentencing (ST), PageID 607.)   Milam was subject to a statutory minimum term of 15 years on five of the six counts.   (RE-76, PSR, PageID 443.)

There were no objections to the guideline calculations, and they were adopted by the court.   (RE-89, ST, PageID 605; 630.)   Because he did not admit his guilt or spare the government the need to prepare for trial, Milam did not receive a reduction in his offense level for acceptance of responsibility.   (RE-89, ST, PageID 606.)

Milam was sentenced on October 7, 2016, to a term of 2,040 months. (RE-89, ST, PageID 642; RE-84, Redacted Judgment, PageID 551.)   On October 13, 2016, Milam filed a timely notice of appeal.   (RE-85, Notice, PageID 555.)

## STATEMENT OF THE FACTS

On January 21, 2015, shortly before 7:30 in the evening, Zachary Apel (Apel), a Memphis Police Department officer on routine patrol, saw a black Chevy Tahoe sport utility vehicle in the rear parking lot of an elementary school. (Record Entry (RE) 46, Transcript of Suppression Hearing (SH), PageID 93-94; RE-77, Redacted Transcript, Change-of-Plea Hearing (TrCOP), PageID 517.)   The SUV, the only vehicle in the lot, was backed into a parking space and had its lights off.   (RE-46 at PageID 100; RE-76, PSR, para. 4, PageID 410.)   The school was closed and there were no activities going on.   (RE-46 at PageID 99, 123; RE-77, TrCOP, PageID 518.)

Apel pulled up in front of the Tahoe with his spotlight on, and shined the spotlight through the Tahoe's windshield "just to see if anybody was inside it." (*Id*. at PageID 94, 100-01, 106; RE-77, TrCOP, PageID 518.)   Apel had not even put his car into park when he saw a man and a child that "looked like they were struggling to pull their pants up."   (*Id*. at PageID 94, 107, 117, 122-23; RE-76, PSR, para. 5, PageID 411.)   Apel stated that if he had not seen anything that concerned him, he would have just driven away.   (*Id*. at PageID 101.)   Based on what he observed, Apel put his car in park, walked to the driver's side of the Tahoe, and "saw the little girl continuing to fasten her pants."   (*Id*. at PageID 94-95, 106-107, 124-125.)   Apel asked the adult male, who was in the driver's seat, to step out of the car.

5

(*Id*. at PageID 95.)   When the man got out of the car, "his pants started—continued to fall" down.   *Id*.   Apel said the pants barely covered the man's genital area.   (RE-76, PSR, para. 5, PageID 410.)   A backpack and child's pink panties were found in the Tahoe.   (*Id*. at para. 8, PageID 411.)

The adult male, subsequently identified as Terrence Milam, was taken into custody on state charges relating to the sexual abuse of a minor.   (*Id*. at PageID 95; RE-76, PSR, para. 5, PageID 410.)   Milam was 35 years old at the time.   (RE-76, PSR, PageID 408.)   The child, later identified as eleven-year-old M.R., was taken to the Child Advocacy Center for an emergency forensic interview.   (RE-76, PSR, para. 5; RE-77, TrCOP, PageID 519.)

During the interview, M.R. stated she was sitting on Milam's lap in the SUV when Officer Apel pulled up.   (RE-76, PSR, para. 6, PageID 411.)   She said both of them had their pants and underwear down.   *Id*.   M.R. disclosed Milam had, in addition to sexually assaulting her that night, also taken sexually explicit pictures of her with his phone.   *Id*.   She said Milam had been taking pictures of her "naked private parts" since she was in third or fourth grade.   (*Id*. at para. 7, PageID 411.) M.R. did not say much more, because she was afraid her mother would beat her.   *Id*.

Investigators obtained search warrants, and on Milam's phone they found a collection of sexually explicit images of M.R. and another girl.   (*Id*. at para. 10, PageID 411; RE-77, TrCOP, PageID 521.)   The second child was identified as

M.R.'s sister, T.R., thirteen years of age.   (RE-76, PSR, para. 10, PageID 411.)
T.R. was forensically interviewed, but unwilling to disclose what had happened to
her.   (*Id*. at para. 11, PageID 411.)   Investigators did learn, however, that about two
years earlier, T.R.'s mother had seen a sexually explicit video of T.R. and Milam on
Milam's phone.   *Id*.   T.R.'s mother confronted T.R., who denied being the child in
the video.   *Id*.   Milam was the boyfriend of the girls' mother, and lived with them.
(RE-77, TrCOP, PageID 519.)   M.R. thought of Milam as her father.   (RE-76, PSR,
para. 6, PageID 411.)

M.R. and T.R.'s faces were visible in many of the images and video clips
Milam had on his phone.   (RE-77, TrCOP, PageID 522, 523-24, 526-27.)   The
perpetrator's genital area was pictured, as were his hands, but his face was not.   *Id*.
The man depicted did have some distinguishing physical characteristics, however—
birthmarks, moles, and scars.   (RE-77, TrCOP, PageID 521-22.)

The government sought and obtained a court order to photograph Milam's
body to determine whether he had markings that matched those of the man in the
videos with M.R. and T.R.   (RE-25, Motion to Compel Photographs, PageID 42-
46; RE-28, Renewed Motion to Compel, PageID 51-56; RE-29, Order Granting
Motion, PageID 57; RE-77, TrCOP, PageID 521.)   The photographs taken of
Milam's nude body revealed a mole on his upper right thigh; skin tags or scars on
his inner left thigh; small scars on his right wrist; and a unique blemish or mark on

top of one of the knuckles of his left hand.   (*Id*. at PageID 522.)   The markings on

Milam's body match those of the adult male depicted abusing M.R. and T.R. in the

videos.   *Id*.

The production and possession of the images on Milam's cell phone and two

SD cards form the basis for the instant charges.   (RE-77, TrCOP, PageID 522.)

Many of the images and video clips contained metadata that helped investigators

determine when and where they were created.   (*Id*.)   The video clips contained

audio. (*Id*. at PageID 522-529; RE-76, PSR, para. 12, PageID 412-414.)

The series of images that serve as the basis for Count 1 of the indictment were

created on January 21, 2015 (the night Officer Apel discovered Milam in the school

parking lot), and found on the SD card that was installed in Milam's Samsung phone.

(RE-77, TrCOP, PageID 522-23.)   They were taken in the front seat of an SUV with

a gray interior and a steering wheel that had "Chevrolet" embossed on it.   (*Id.* at

PageID 523.)   Each depicted Milam vaginally penetrating M.R., who was barely

eleven years old, with his penis.   *Id*.

The series of still images that serve as the basis for Count 2 of the indictment

were also created on January 21, 2015, and were found on the same SD card as were

the pictures related to Count 1.   (*Id*.)   They depict T.R. performing oral sex on

Milam.   (*Id*.)   T.R.'s face is visible, as are some of Milam's birthmarks.   (*Id*.)

There are also photos depicting the lascivious display of T.R.'s naked genitals.   (*Id*.)

8

The pair of video clips that serve as the basis for Count 3 of the indictment appear to have been taken as Milam was dropping M.R. off for school.  (*Id*.; RE-76, PSR, para. 12, PageID 412.)   They were located on Milam's Alcatel SD card. (RE-77, TrCOP, PageID 526.)   One video is two minutes, fifty-nine seconds long, and the other is two minutes, fifty-five seconds in length.  (*Id*., PageID 523.) Metadata for this school morning series shows the videos were created on December 1, 2014, at 8:21 a.m. and 8:40 a.m., again, in the front seat of an SUV.  (RE-76, PSR, para. 12, PageID 412; RE-77, TrCOP, PageID 524-25.)   Windshield wipers can be heard slapping back and forth, and a weather report on the radio forecasts light rain.  (RE-77, TrCOP, PageID 524-25.)   The traffic report notes a crash at a location nearby.  *Id*.   The mole on Milam's upper right thigh is visible.  *Id*.   The child has a teardrop in her eye.  *Id*.   M.R. is being made to perform oral sex on Milam.  *Id*.   She occasionally stops to wipe her face with a napkin, but is told to "put it back in now."  *Id*.   At approximately two minutes into video clip one, M.R. whimpers, "can I quit?" and gags.   In the second video, Milam is slapping and grabbing the child's bare buttocks; her pants are down at her ankles and she wears white sneakers.  *Id*.   Milam praises her, and says he needs to "teach you how to do two things at a time."  (RE-76, PSR, para. 12, PageID 412.)   She asks Milam to stop hitting her, because "it hurts."  *Id*.   A gospel song is on the radio.  (RE-77,

TrCOP, PageID 525.)   Milam masturbates while the child orally stimulates his scrotum; then he tells her to open her mouth.   *Id.*

Another video series serves as the basis for Count 4 of the indictment, again, featuring M.R.   (RE-76, PSR, para. 12, PageID 412-13.)   The series was stored on Milam's Alcatel SD card.   (RE-77, TrCOP, PageID 526.)   Metadata indicates these three clips were recorded on October 13, 2013, at 2:47 a.m., 2:50 a.m., and 3:07 a.m. (*Id.* at PageID 525.)   The setting for this series appears to be the family home; similar surroundings can be seen in other (benign) images found on Milam's electronic devices.   *Id.*   Each clip is about one minute in length.   (RE-76, PSR, para. 12, PageID 412.)   M.R. is standing; she is wearing a sleeping cap, pajama bottoms, socks, and a small, red tee-shirt that reads "Sassy."   (RE-77, TrCOP, PageID 526.)   Milam is wearing brown plaid boxers, and the waistband of blue jogging pants is also visible.   (*Id.*)   Milam is making M.R. perform oral sex on him. (RE-76, PSR, para. 12, PageID 412; RE-77, TrCOP, PageID 526.)   In the first clip, M.R. turns to the left and pulls what appears to be a pubic hair from her mouth. (RE-77, TrCOP, PageID 526.)   Throughout the series, she is urged to "keep going." (*Id.* at PageID 526-27.)   When she stops again, Milam can be heard to sigh.   *Id.*

The video series that serves as the basis for Count 5 of the indictment features T.R.   (RE-76, PSR, para. 12, PageID 413; RE-77, TrCOP, PageID 527.)   The clips

were produced on the same day as the videos associated with Count 4, but approximately one half-hour earlier—between 2:12 a.m. and 2:17 a.m. (RE-76, PSR, para. 12, PageID 413; RE-77, TrCOP, PageID 527.) These three videos were also stored on the Alcatel SD card. (RE-77, TrCOP, PageID 527.) T.R.'s face is visible; she is wearing a bright pink earring. *Id.* These videos were recorded in the front seat of an SUV with gray interior; again, "Chevrolet" is written on the steering wheel. (*Id.* at PageID 527-28.) Milam is making T.R. perform oral sex on him. *Id.* He is wearing brown plaid boxers and blue joggers. *Id.* The mole on Milam's upper right thigh is visible, as are the marks on his inner left thigh. (*Id.* at PageID 527-28.) In the final clip, the victim is licking Milam's scrotum while he masturbates. *Id.* The following exchange takes place while the child is orally-stimulating Milam:

| Victim: | (burps) "Excuse me." |
|---|---|
| Milam: | "Now put this in your mouth, and don't waste nothing. You hear me? |
| Victim: | "Yes, sir." |
| Milam: | "Hold it in. Get ready." Then, "Hold it! What did I just say?" |
| Victim: | "Hold it." |

Milam ejaculates and then tells the victim to look at the camera; she does. (RE-76, PSR, para. 12, PageID 413; RE-77, TrCOP, PageID 528.)

11

Count 6 of the indictment is based on 655 images and 9 videos of child pornography, depicting M.R. and T.R., found on the Samsung phone and SD card in Milam's possession at the time of his arrest on January 21, 2015.   (RE-76, PSR, para. 12, PageID 414; RE-77, TrCOP, PageID 528.)   The majority of them appear to have been taken in Milam's Tahoe.   (RE-77, TrCOP, PageID 528.)

## SUMMARY OF THE ARGUMENT

Despite the fact that he successfully impeached a government witness during a hearing on his motion to suppress, Milam asks this Court to find a violation of the Confrontation Clause because the magistrate judge did not let him play in open court an audio recording of testimony given by the witness at a state court preliminary proceeding.   Milam is due no relief.   First, the Supreme Court has determined that the right to confront witnesses pertains to trials, not pre-trial proceedings.   And second, Milam was able to play the recording outside of court for the government witness, who subsequently testified that on a previous occasion, under oath, he had described events surrounding Milam's arrest a little bit differently.   The court then considered the recording in finding the witness credible and denying the motion to suppress.   Milam cross-examined the witness, impeached the witness, and accomplished everything he now says he was denied the opportunity to do, and that is why his first argument cannot succeed.

Milam also challenges the substantive reasonableness of his within-guidelines sentence of 2,040 months, primarily because it promotes disparity in sentencing. But in comparing the sentence he received for producing child pornography with sentences imposed in other production cases, Milam does not compare himself to similarly-situated defendants.   For example, Milam had a Category V criminal history score; those in the comparisons did not.   Milam did not receive credit for

acceptance of responsibility; the others, who entered guilty pleas, likely did.   The district court considered all of Milam's arguments, acknowledged the seriousness of the offense and the need for deterrence, and took into account the horrific details of Milam's ongoing sexual abuse of two young girls who thought of Milam as their dad.   The sentence imposed is lengthy, but no greater than necessary to hold Milam accountable for his conduct and deter others who might be tempted to do as he did. For these reasons, this Court should affirm.

<u>ARGUMENT</u>

I.    Because the right to confront witnesses is a right assured to defendants at trial, not pre-trial, proceedings, and because Milam successfully impeached a government witness during a pre-trial hearing on Milam's motion to suppress, his claim that the Confrontation Clause was violated is without merit.

<u>Standard of Review</u>

During a hearing on Milam's motion to suppress, Milam objected to the magistrate judge's decision to not allow the playing of an audio recording of a testifying witness' previous testimony given at a state court preliminary hearing. Milam frames this as a Confrontation Clause violation.   If that were so, this Court should review *de novo*.   *United States v. Johnson*, 440 F.3d 832, 842 (6th Cir. 2006).

But the right to confrontation is a trial right, not extended to pre-trial proceedings.   *Barber v. Page*, 390 U.S. 719, 725 (1968); *see also Nelson v. O'Neil*, 402 U.S. 622, 626 (1971).   This is so because "the interests at stake in a suppression hearing are of a lesser magnitude."   *United States v. Raddatz*, 447 U.S. 667, 679 (1980); *see also United States v. Burke*, 345 F.3d 416, 425 (6th Cir. 2003).

The decision of a court to exclude evidence or limit a defendant's cross-examination of a witness is reviewed for abuse of discretion.   *United States v. Davis*, 361 F. App'x 632, 634 (6th Cir. 2010); *United States v. Holden*, 557 F.3d 698, 703 (6th Cir. 2009); *United States v. Green*, 202 F.3d 869, 873 (6th Cir. 2000).

This also applies to evidentiary rulings at suppression hearings. *United States v. Stepp*, 680 F.3d 651, 660 (6th Cir. 2012). Under this standard, evidentiary rulings should stand unless the reviewing court is "left with the definite and firm conviction" that the lower court "committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors or where it improperly applies the law or uses an erroneous legal standard." *Id.* (internal quotes and citations omitted).

Therefore, this Court should review for abuse of discretion.

<u>Argument</u>

Judges are afforded wide discretion with respect to placing limits on cross-examination of a witness. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *United States v. Slone*, 833 F.2d 595, 600 (6th Cir. 1987). Accordingly, it is within the judge's purview to decide when an issue has been adequately probed. *Slone*, 833 F.3d at 601. When cross-examination has not been arbitrarily curtailed, or denied altogether, there is no abuse of discretion. *Id.*

The rules of evidence do not apply at suppression hearings. *United States v. Matlock*, 415 U.S. 164, 172-73 (1974); *United States v. Stepp*, 680 F.3d 651, 668 (6th Cir. 2012); Fed. R. Evid. 104(a), 1101(d)(3). Even so, a court still has "wide latitude" to place "reasonable limits" on testimony at a suppression hearing to facilitate examination of the relevant evidence. *United States v. Stanley*, 351 F. App'x 69, 74 (6th Cir. 2009); *see also Stepp*, 680 F.3d at 668-69. So while it is

16

true that at a suppression hearing, a court should err on the side of inclusiveness, that does not mean there can be no limits.

In the instant case, Milam sought to suppress evidence obtained after what he argued was an unlawful detention.[1]   (RE-36, Motion to Suppress, PageID 66-69; *see also* RE-49, R&R, PageID 169.)   Thus, during the suppression hearing, Milam wanted to use the arresting officer's previous testimony regarding the arrest, given at a state court preliminary hearing, to impeach him.   (RE-46, SH, PageID 107.) Milam did not have a transcript of the testimony, however—only an audio recording—and he wanted to play the entire hearing while Officer Apel was on the stand.   (*Id.* at PageID 108-09.)   The government objected, in part, because any audio played in court would not be transcribed by the court reporter and become part of the record.   (*Id.*, PageID 120.)   Ultimately, the matter was resolved by taking a recess and letting the witness listen to the relevant portion of his previous testimony; he then returned to the stand and defense counsel resumed questioning.   (*Id.* at PageID 112-13.)   Having had his recollection refreshed, the witness admitted that his description of events during the suppression hearing varied somewhat from his description of events at the state court hearing.   (*Id.* at PageID 116-18.)   A disk with the recording was marked as an exhibit to the hearing for identification

---

1 On appeal, Milam is not challenging the merits of the district court's Fourth Amendment analysis in denying the suppression motion.

purposes.    (*Id.* at PageID 132.)

Milam's impeachment of the witness was successful; he admitted as much, stating, "I know how to impeach a witness and I just did" and, "I don't need to ask him any more questions."    (*Id.* at PageID 118; 120.)    Yet, Milam still sought to play the entire recording, telling the court it was "incumbent upon you that you listen to the preliminary hearing."    (*Id.*, PageID 119; 121.)    The magistrate judge acknowledged the successful impeachment, saying, "you got him to admit the testimony was different."    (*Id.*, PageID 118.)

On redirect, the government asked Officer Apel about the nature of a preliminary hearing in state court; Apel replied that it generally required a "vague statement" so the judge could determine whether or not the case should proceed to criminal court.    (*Id.*, PageID 123-24.)    Apel explained that he was giving more detail during the suppression hearing because he was being asked to provide more details.    (*Id.* at PageID 124; *see also* RE-49, R&R, PageID 165-67.)    The magistrate accepted this explanation and recommended that the motion to suppress be denied.    (RE-49, R&R, PageID 170-71.)

Even if this Court does find that the recording should have been admitted into evidence at the hearing, it is important to note that Milam would have undercut his own argument by playing it for the magistrate judge.    Officer Apel's explanation that his first description given at the state court preliminary hearing was simply a

18

vague, general account of events was borne out later in that hearing—when Apel was asked to provide additional details, his account of events was completely consistent with the testimony given during the suppression hearing in magistrate court.

"A witness' prior inconsistent statement may be admitted as substantive evidence if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement…was given under oath subject to the penalty of perjury." *United States v. Mayberry*, 540 F.3d 506, 515 (6th Cir. 2008) (internal quotations omitted); Fed. R. Evid. 801(d)(1).   But a court first has to decide whether the proffered "inconsistent" statement is indeed inconsistent – here, it was not.   In the instant case, at approximately 1:50 into the recording of the state hearing, Officer Apel was asked generally whether he noticed something out of the ordinary on the given date.   He had, and said, "I went up to investigate the vehicle, I shined my spotlight inside, and I saw defendant Milam and a little girl in the front seat.   As I was exiting my squad car I noticed that they were wiggling around—it looked to me like they were trying to pull their pants up, and uh, at that time I approached the driver."   (RE-46, SH, Ex. 3.)

Then, at approximately 8:18 into the recording, Officer Apel, when asked on cross-examination for more specific detail regarding what he did after driving up to the Chevy Tahoe and shining the light inside it, stated: "At that point I see the

defendant here, and the little girl, appear to be pulling up their pants.    They were

doing a wiggling motion, with this [sic], indicative of them pulling up their pants.

And at that point, I exited the vehicle."    *Id.*

Defendant sought to use the first excerpt at the suppression hearing in the

instant case to show that defendant was detained, blocked in by the officer's vehicle,

before the officer noticed any activity that could objectively qualify as generating

reasonable suspicion.    But, when confronted, the witness did not deny that he saw

the defendant and victim putting on clothes as he got out of his vehicle.    (RE-46,

PageID 115-16).    He reiterated,

> When I saw the wiggling around, <u>as soon as I put the spotlight on the vehicle,
> I was still in motion, and then they were wiggling</u>.    When I stopped, they
> were wiggling.    When I got out, they were wiggling.    When I opened the
> door to the driver's side, they were wiggling.

(RE-46, PageID 117 (emphasis added).)    He also noted that he was being asked to

provide more detail during the suppression hearing than he had been at the

preliminary proceedings.    (*Id*. at PageID 117-18.)

The officer's statement that he noticed the defendant and victim getting

dressed as he got out of his patrol car is not inconsistent with his testimony that he

noticed the defendant and child while he was shining a light at the car <u>and</u> while he

was getting out of the car.    True, one account is phrased differently, with more

detail, but both are essentially the same.    And neither version proves what the

20

defendant hoped it would: that the evidence should be suppressed because he was detained before any reasonable suspicion justifying detention could be formed.

To the extent Milam's challenge to the magistrate's procedures is seen as a challenge to the credibility findings below, Milam cannot show that the court clearly erred in finding the officer to be credible.   As the district court found, the magistrate judge ultimately listened to the recording that the defendant wanted to play during the hearing, and, as Milam requested, took the recording into consideration in ruling on the officer's credibility.   (RE-49, R&R, PageID 165-70; RE-57, Order, PageID 205-06.)   Milam cites no law to support his argument that such a recording needed to be played in open court, instead of at a recess during the hearing.   The district court also properly found that Milam was given sufficient opportunity to question the officer about his prior testimony, and it is unclear how "additional questions…would have diminished Officer Apel's credibility."   (RE-57, Order, PageID 205-06.)

Milam can show no Confrontation Clause violation, abuse of discretion, or clear error.   This Court should affirm.


II.   Milam's within-guidelines sentence is substantively reasonable because the court did not consider impermissible factors or give any single factor disproportionate weight.

Standard of Review

Criminal sentences are reviewed for both substantive and procedural reasonableness. *Gall v. United States*, 552 U.S. 38, 51 (2007). Whether a sentence is "inside, just outside, or significantly outside" the advisory guidelines range, the court should review procedural and substantive reasonableness using a deferential abuse-of-discretion standard. *Id.* at 40. In so doing, the Court should "first ensure that the district court committed no significant procedural error." *Id*. at 51. Abuse-of-discretion review consists of two components: procedural and substantive. *Id*.; *United States v. Novales*, 589 F.3d 310, 314 (6th Cir. 2009).

"Procedural reasonableness requires that a district court must properly calculate the guideline range, treat the guidelines as advisory, consider statutory § 3553(a) factors, and adequately explain the chosen sentence—including an explanation for any variance from the guideline range." *United States v. Presley*, 547 F.3d 625, 629 (6th Cir. 2008) (internal quotation marks and citations omitted). A sentence can also be considered procedurally unreasonable if the district court fails to consider and explain its reasons for rejecting non-frivolous mitigation arguments lodged by a defendant, or if the court bases its decision on clearly erroneous facts. *See United States v. Robinson*, 669 F.3d 767, 773 (6th Cir. 2012); *United States v. Wallace*, 597 F.3d 794, 803 (6th Cir. 2010).

Review of the substantive reasonableness of a sentence takes into account the

totality of the circumstances, whether the sentencing judge varied from the guidelines, and to what degree. *Novales*, 589 F.3d at 314. A sentence might be substantively unreasonable if it is based on impermissible factors, a single factor was given unreasonable weight, or the sentence was arbitrary. *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008). Properly-calculated within-guidelines sentences are "afforded a rebuttable presumption of reasonableness on appeal." *Id.*

<u>Argument</u>

There were no objections below to the facts or guideline calculations as stated in the PSR in Milam's case. (RE-89, ST, PageID 605.) On appeal, Milam argues only that his sentence is greater than necessary to accomplish the goals of sentencing and that because it is quite long, it promotes disparity among similarly-situated defendants.

As support for his argument, Milam calls this Court's attention to several cases in which child pornography offenders received sentences less severe than he did, and asks why such a sentence would not be appropriate for him, too. But the comparisons should not lead this Court to wonder whether Milam deserves a sentence in line with those lesser sentences. Rather, it begs the question whether those other offenders received too much leniency. In any event, these cases do nothing to rebut the presumption that Milam's guideline sentence is reasonable.

Milam cites *United States v. Irey*, 612 F.3d 1160 (11th Cir. 2010) (en banc),

as a case in which the defendant, who sexually exploited several young children over the course of four to five years for the purpose of producing child pornography, received only a 210-month sentence.[2]    (Document 17, Appellant's Brief (AB), Page 34.)   The court noted that Irey produced "some of the most graphic and disturbing child pornography" ever seen, but "*[b]ecause the government had charged all of Irey's crimes in just one count, the statutory maximum...had the effect of reducing the guidelines range*."   *Id*. at 1166 (emphasis added).   Mr. Irey's case is therefore not fairly compared to Milam's.

Shawn Ratigan, *United States v. Ratigan*, 581 F. App'x 587 (8th Cir. 2014), is likewise not similarly situated to Milam.   (Document 17, AB, Page 38.)   Ratigan was similarly charged (four counts of production of child pornography and one count of attempted production), *see id.* at 588, but the type of images he created and his criminal history differed significantly from Milam's.   Ratigan, a priest, created images featuring the lascivious exhibition of the genital and pubic area of his victims.   *Id*. at 589.   As described, the images appear to have been created in a single encounter with each of four children.   *Id*.    Milam, on the other hand, sexually assaulted his two victims, sisters, for many years.   Notably, the earliest

---

2 The government appealed Irey's 210-month sentence, and the Eleventh Circuit vacated the sentence and remanded with instructions to impose the maximum term allowed by law, 360 months.   *See United States v. Irey*, 458 F. App'x 854, 855 (11th Cir. 2012).

conduct charged in the indictment occurred in October 2013, and resulted in the "Sassy Cap" and "Pink Earring" videos (described in detail in the statement of facts). Watching the children in these clips, one can infer that the course of abuse had already been going on for some time before these recordings were made, because Milam does not have to instruct either child as to how to do the things he is making them do.

Nor is Trevor Shea similarly situated.  (Document 17, AB, Page 39.)  *See United States v. Shea*, 493 F. App'x 792 (7th Cir. 2012).  Shea recorded webcam video of pubescent girls exposing their breasts, and subsequently, blackmailed the girls into sending images that were more sexually explicit.  *Id.* at 793.  Shea was only 19 years old; his victims were all thirteen or older.  *Id.*

It should also be noted that other defendants more similar to Milam than those identified in Milam's brief have received federal sentences longer than Milam's, including:

- Christopher Bour, who pleaded guilty to similar charges (three counts of production of child pornography; one count of purchasing a child for production of child pornography; and one count of possession of child pornography) but had much less frequent contact with his victims than did Milam, and received a sentence of life plus 85 years.  *United States v. Bour*, 804 F.3d 880, 883 (7th Cir. 2015).  Bour only met his victims

25

(as in Milam's case, they were sisters) on "seven or eight occasions." *Id*. One of the girls was under two years old. *Id*. The sentencing judge stated that he tried to give Bour a sentence that was "no more than is absolutely necessary," but found a need to deter "other Christopher Bours" with a "very, very high" penalty. *Id*. at 885-86. Bour's was an above-guidelines sentence, affirmed by the Seventh Circuit. *Id*. at 886. The court noted that the sentencing judge believed it was "necessary to ensure that Bour would never leave prison" and that belief was a "justified reason" for the sentence. *Id*. at 887.

- David Ryan Bostic, who had an offense level of 52 (Milam's was 53) and was sentenced to a 315-year term of imprisonment. *United States v. Bostic*, 491 F. App'x 731 (7th Cir. 2012). Bostic pleaded guilty to 65 child pornography-related counts. *Id*. at 731. Like Milam, Bostic argued on appeal that his sentence was disparate. *Id*. at 732. But the court noted Bostic had not identified any defendants with similar records who had been found guilty of similar conduct and received a lesser sentence. *Id*.

- Daniel Eckstrom, who pleaded guilty to nine counts of producing, possessing and distributing child pornography, had an offense level of

55, and was sentenced to 240 years in prison. *United States v. Eckstrom*, 626 F. App'x 640, 641 (7th Cir. 2015). Like Milam, Eckstrom received consecutive maximum terms on each count of conviction. Eckstrom sexually abused his daughter over the course of four years, producing "thousands of photos and hundreds of videos" of the abuse, and sharing those images online. *Id*. at 640. Eckstrom said he gave the child marijuana to "lure" her into sexual conduct. *Id*. Eckstrom also admitted to creating sexually explicit images of two other girls. *Id*. Unlike Milam, Eckstrom had little criminal history. *Id*. at 641-42. At sentencing, Eckstrom told the court that he had been subjected to abuse as a child; he also expressed remorse, which the court acknowledged. *Id*. Nonetheless, the court saw fit to impose a very long sentence, which was affirmed.

- Jennifer Lynn Thurman, who pleaded guilty to four counts of producing child pornography and aiding and abetting such production; like Eckstrom and Milam, she too was sentenced to maximum terms on each count, to run consecutively. *United States v. Thurman*, 494 F. App'x 828, 830-31 (9th Cir. 2012). The district court, in imposing Thurman's 120-year sentence, noted the importance of protecting the public and avoiding disparity in sentencing. *Id*. at 831. The Ninth

27

Circuit affirmed.  *Id.*

- Walter Vowell, who pleaded guilty to one count each of production and possession of child pornography, and was sentenced to 65 years. *United States v. Vowell*, 516 F.3d 503, 507 (6th Cir. 2008).   Vowell was his co-defendant Pratt's live-in boyfriend; the victim was Pratt's eight-year-old daughter.  *Id*.  Vowell and Pratt recorded Vowell on three occasions molesting the child.  *Id*.  Vowell, previously convicted of rape, had an offense level of 32.  *Id*. at 508. The court, in imposing sentence, expressly stated that it was "to make sure that you do not have an opportunity to abuse another child."  *Id*.  The sentence, 242% above guidelines, was affirmed.  *Id*. at 511.

Additionally, in just the last few years, many other sentences similar to Milam's have been upheld as substantively reasonable and not disproportionate to the seriousness of the offense or the sentences imposed upon similarly-situated defendants.  *See United States v. Graziotti*, 619 F. App'x 980, 981 (11th Cir. 2015) (210 years for seven counts of production of child pornography and one count each of distribution and possession); *United States v. Gazafi*, 594 F. App'x 162, 163-64 (4th Cir. 2015) (120 years for six counts of production of child pornography); *United States v. Strong*, 773 F.3d 920, 926-27 (8th Cir. 2014) (110-year sentence imposed on 76-year-old man for one count of production and four counts of possession of

child pornography); *United States v. Grigsby*, 749 F.3d 908, 908-09 (10th Cir. 2014) (260-year term for eight counts of production and one count of possession); *United States v. Cobler*, 748 F.3d 570, 582 (4th Cir. 2014) (120 years for three counts of production, one count of transportation, and one count of possession); *United States v. Williams*, 561 F. App'x 784, 785 (11th Cir. 2013) (100-year sentence for two counts of production, one of distribution, one count of possession, and firearms charge).

Finally, Milam refers this Court to a number of studies that compare the sentences of white offenders with the sentences imposed upon offenders of color, speculating that "[p]erhaps Mr. Milam's race played a part here."  (Document 17, AB, at Page 35-36.)   This is a baseless claim, as the record is utterly devoid of any indication that race was a consideration in charging or sentencing.   To the contrary, the record clearly demonstrates that Milam, a man with a criminal history so extensive that it took up twenty pages in his presentence report, repeatedly and violently abused two little girls, just nine and eleven years old at the time of the earliest charged conduct.   Milam also recorded the abuse and made certain the children were aware of the camera.   He forced the girls to display their genitals for photographing, have intercourse with him, and perform oral sex on him at all hours—in the morning before school, later in the day, in the middle of the night. Milam even perpetrated serial abuse—engaging in sexual activity with both children

in the span of an hour.  These factors and others, not Milam's race, were what "played a part" in the sentence.

At sentencing, the court addressed the 18 U.S.C. § 3553(a) factors thoroughly. Milam's claim that he suffered sexual and physical abuse as a child was acknowledged, although the court declined to consider that a mitigating factor. (RE-89, ST, PageID 633; RE-76, PSR, paras. 140-41.)  Instead, the court found the fact that Milam was a father-figure to his victims and the on-going nature of the abuse to be important considerations.  (*Id*. at PageID 631.)

Despite the fact that Milam did not plead guilty, the Court gave Milam the benefit of the doubt, assuming "he's remorseful and can't say so."  (*Id.* at PageID 632.)  Yet the court also noted that "any apologies [Milam] wants to make can't atone" for what he did.  (*Id*. at PageID 633.)  And further, that but for the police officer who discovered Milam in the dark parking lot, having sex with a child, the abuse would probably have still been ongoing.  (*Id*. at PageID 631.)  The court continued, "there's a strong need to promote respect for the law…Milam has a long history of contempt for the law."  (*Id*. at PageID 636.)

In considering the guidelines, the court noted their discretionary nature.  (*Id*. at PageID 630.)  The court pointed out that Milam's statutory maximum sentence was below the initially calculated guideline range.  (*Id*. at PageID 637-38.)  And the court also acknowledged the discretionary nature of sentencing and his authority

to impose a sentence in accord with statutory minimums.  *Id*.  Ultimately though, the court found that to do so would be "a mistake because in a case of this seriousness, in a case where the conduct is this extreme, where the exploitation is this severe, what (sic) it occurs over many years, it needs to be the strongest possible general deterrence.  Someone who sets out to exploit children this way ought to know that the sentence will be extremely serious."  *Id*.  Finally, the court explained that "a lower sentence would arguably protect the public but…I don't believe that a lower sentence would afford the sort of deterrence to criminal conduct that's necessary to protect the public more generally…from others who might be similarly inclined, who might pause, knowing the severity of the sentence."  (*Id*. at PageID 638-39.)

All of this was properly within the district court's discretion.  The sentence should be affirmed.

## CONCLUSION

This Court should affirm.

Respectfully submitted,

EDWARD L. STANTON III
United States Attorney

s/ Debra L. Ireland
DEBRA L. IRELAND
Assistant United States Attorney
167 North Main Street, Suite 800
Memphis, Tennessee 38103
(901) 544-4231
deb.ireland@usdoj.gov

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation provided in Rule 32(a)(7)(C)(i) of the Federal Rules of Appellate Procedure.   The brief contains **7,787** words of Times New Roman (14-point) proportional type, from the Statement of Jurisdiction through the Conclusion.   Microsoft Word is the word-processing software that I used to prepare this brief.

/s/ Debra L. Ireland
DEBRA L. IRELAND

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Appellee, pursuant to Sixth Circuit Rules 28(c) & 30(b), hereby designates the following filings in the District Court's record as entries that are relevant to this appeal:

| RECORD ENTRY | DESCRIPTON OF ENTRY | DATE FILED | PAGEID NUMBERS |
|---|---|---|---|
| 2 | Redacted Indictment | 04/09/2015 | 7-13 |
| 25 | Motion to Compel Photographs | 10/30/2016 | 42-46 |
| 28 | Second Motion to Compel Photographs | 11/20/2016 | 51-56 |
| 29 | Order Granting Motion | 11/23/2016 | 57 |
| 36 | Motion to Supress | 01/26/2016 | 66-69 |
| 44 | Minute Entry | 02/29/2016 | -- |
| 46 | Transcript of Suppression Hearing | 03/02/2016 | 93-125 |
| 49 | Report & Recommendation | 03/18/2016 | 164-171 |
| 57 | Order Denying Suppression | 06/01/2016 | 196-211 |
| 76 | PSR Final (Sealed) | 09/29/2016 | 408-414 |
| 77 | Redacted Transcrip Jury Trial/COP | 10/04/2016 | 456-528 |
| 84 | Redacted Judgment | 10/07/2016 | 551- |
| 85 | Notice of Appeal | 10/13/2016 | 555 |
| 89 | Sentencing Transcript | 12/09/2016 | 605-642 |
| | | | |
| Appellant's Brief (AB) at Pages: | | | 34-39 |
| Presentence Report paras. | | | 4-166 |

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Brief for Plaintiff-Appellee

United States was served upon counsel for Defendant-Appellant Terrence Milam,

Needum Louis Germany, III
Federal Public Defender
200 Jefferson, Ave., Suite 200
Memphis, Tennessee 38103

by filing with the Court's CM/ECF system this 1st day of February, 2017.

/s/ Debra L. Ireland
DEBRA L. IRELAND
Assistant United States Attorney

35